THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BASILIO TOVAR, and** | § | |
| **RUBI ESPARZA,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:23-cv-1758-K** |
| | § | |
| **JOSUE RODRIGUEZ,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT JOSUE RODRIGUEZ'S ANSWER TO
PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Defendant Josue Rodriguez files his answer in response to Plaintiffs' First Amended Complaint (Doc. 11):[1]

> "[A] Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application. Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation."

*Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006).

**ANSWER:** The unnumbered paragraph on page 1 of the Complaint does not plead any factual allegations. Therefore, no answer is required. Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

---

[1] For ease of reference, Defendant restates verbatim the allegations in each numbered paragraph of the Complaint (except where noted with "[*sic*]") in the main body of his answer. Following each numbered paragraph of allegations, Defendant sets forth his admissions or denials in response to those allegations.

## SUMMARY

On December 16, 2022, Detective Josue Rodriguez with the Dallas Police Department included false and misleading statements in the warrant affidavits for Basilio Tovar and Rubi Esparza, resulting in their wrongful arrest for a murder they did not commit. Just before 6:00 AM on December 19, 2022, the police came to their home, pointed rifles at them, and arrested them for murder with an arrest warrant based off Detective Rodriguez's affidavit. However, Basilio and Rubi did not commit the crime, were not at the location where the crime was committed, and the criminal charges were never even filed as it was clear that they had been wrongfully arrested.

However, both Basilio and Rubi spent Christmas in the Dallas County Jail – instead of at home with their eight- and ten-year-old sons. Basilio's bond was set at $250,000 and Rubi's bond was set at $1,000,000. Rubi was not released until after spending ten days in jail. Basilio was not released until spending eleven days in jail. However, because their bonds were so high, neither Rubi nor Basilio had any idea how long they were going to remain in custody fighting their cases. Both were aware that a trial may not occur for months or even years and innocent people are convicted at trial all the time. Accordingly, the time spent in custody did not feel like ten or eleven days, but was time spent without an ending in sight and not knowing when or if they would be able to see and hug their children again.

Once finally released, the impact of Detective Rodriguez's false statements continued to negatively affect them. Rubi was fired from her job for being arrested for murder and was unable to obtain new employment for months due to her background continuing to show the arrest. Basilio had to take a demotion at work due to missing time while in jail and is making less money now.

Basilio and Rubi now file this lawsuit against Detective Rodriguez for violating their constitutional rights under the Fourth Amendment to the United States Constitution.

**ANSWER:** Defendant objects that this unnumbered summary spanning page 2 of the Amended Complaint violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." The allegations contained therein are denied as stated.

## I.
## PARTIES

1.      Plaintiff Basilio Tovar is a resident of Dallas County, Texas.

**ANSWER:**    Admitted.

2.      Plaintiff Rubi Esparza is a resident of Dallas County, Texas.

**ANSWER:**    Admitted.

3.      Defendant Josue Rodriguez is a Detective with the City of Dallas Police Department and may be served at his place of employment at the City of Dallas Police Department located at 1400 Botham Jean Blvd, Dallas, TX 75215, or wherever he may be found. Defendant Rodriguez is being sued in his individual capacity.

**ANSWER:**    Admitted.

## II.
## JURISDICTION AND VENUE

4.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

**ANSWER:**    Admitted.

5.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants [*sic*] are domiciled and/or reside in the Northern District of Texas and all of the causes of action accrued in the Northern District of Texas.

**ANSWER:**    Admitted.

### III.
### FACTS AND ALLEGATIONS

6.      On November 5, 2022, at approximately 1:00 a.m., Xavier Ramón Hernández was shot and killed in front of the Chevron Gas Station located at 4323 W. Illinois Ave., Dallas, Texas.

**ANSWER:**      Admitted.

7.      Detective Josue Rodriguez with the Dallas Police Department investigated the murder.

**ANSWER:**      Admitted.

8.      A witness stated that a black truck pulled up, the passenger door opened, a gun shot was fired, and the truck drove away.

**ANSWER:**      Admitted.

9.      Detective Rodriguez also learned that on the night Xavier Hernandez was killed, he had been at Player's Bar with his girlfriend, Maria Barrientez, and some other people including Basilio Tovar and Rubi Esparza.

**ANSWER:**      Admitted.

10.      Detective Rodriguez also learned that Rubi and Basilo drove a black truck.

**ANSWER:**      Admitted.

11.      Detective Rodriguez then wrote affidavits for the arrests of Basilio and Rubi.

**ANSWER:**      Admitted.

12.      However, Detective Rodriguez did so by omitting material exculpatory facts and making false statements that mislead the court into believing there was probable cause to arrest Basilio and Rubi – when in fact, the evidence showed they were not involved in the shooting.

**ANSWER:**      Denied.

13.      On December 16, 2022, Defendant Rodriguez, as the affiant, swore to an affidavit

for arrest warrant for Basilio Tovar for the crime of murdering Xavier Ramón Hernández on November 5, 2022.

**ANSWER:**   Admitted.

14.     That same day, on December 16, 2022, Defendant Rodriguez, as the affiant, swore to an affidavit for arrest warrant for Rubi Esparza for the crime of murdering Xavier Ramón Hernández on November 5, 2022.

**ANSWER:**   Admitted.

15.     Defendant Rodriguez signed both affidavits and swore to the validity of the facts included in them.

**ANSWER:**   Admitted that Detective Rogriguez signed the arrest affidavit under oath. The remaining allegations are denied.

16.     Defendant Rodriguez made materially false statements and omissions related to Rubi and Basilio's truck being at the scene of the shooting, driving away from the scene of the shooting, and their phone data placing them at the shooting.

**ANSWER:**   Denied.

17.     It is undisputed that their truck is not the truck involved in the shooting and that they were never at the scene of the shooting or driving away from the scene of the shooting.

**ANSWER:**   Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

18.     The following are screenshots of the affidavits sworn to by Defendant Rodriguez for the arrests of Basilio and Rubi for the crime of murder, a violation of Section 19.02 of the Texas Penal Code, a first-degree felony.

**ANSWER:**   Admitted.

19.      In each of the screenshots, four statements have been highlighted in orange, yellow, blue, and pink.

**ANSWER:**   Admitted.

20.      These statements were included to mislead the court into issuing arrest warrants for Basilio and Rubi.

**ANSWER:**   Denied.

21.      Without these misleading statements, the court would not have found probable cause for their arrests.

**ANSWER:**   Denied.

STATE OF TEXAS                    AFFIDAVIT FOR ARREST WARRANT                    COUNTY OF DALLAS

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant, who after being duly sworn by me on oath stated: My name is Jesus Rodriguez #10284 and I am a police officer of the City of Dallas, Dallas County, Texas. I, the affiant, have good reason and do believe that on or about the 5th day of November, 20 22, one (name of suspect) Tovar, Basilio (L/M, 2/9/1972) did then and there in the City of Dallas, Dallas County, Texas commit the offense of Murder, a violation of Section 19.02 of the Texas Penal Code, a F/1.

Affiant's belief is based upon the following facts and information which Affiant received from:
☒ Affiant's personal investigation of this alleged offense.
☐ _____, a fellow peace officer of the City of Dallas, Dallas County, Texas, who personally participated in the investigation of this alleged offense, providing this information to Affiant, and whose information Affiant believes to be credible.

On November 5, 2022, at approximately 1:00 am, Dallas Police Officers responded to a shooting call at 4323 W Illinois Ave., Dallas, Dallas County, TX. Upon arrival, DFR transported Complainant X. Hernandez to Methodist Hospital, where died from his injuries. Complainant Hernandez sustained one gunshot to his head.

A Witness at the scene stated they observed a newer model black pickup truck pull up to the location. The Witness did not see anyone inside or outside the vehicle but observed the passenger side door open and close. The Witness heard one gunshot then observed the black truck drive off. Video surveillance obtained showed the Complainant walking Northbound on 2300 S Cockrell Hill Rd. on the sidewalk. A newer model, 4 door, black Chevy Silverado with chrome lining, chrome wheels and a bed cover is seen pulling up next to the Complainant then suddenly driving off shortly after.

On November 8, 2022, Detective Rodriguez interviewed Witness R. Hernandez, who is the Complainant's older brother. Witness R. Hernandez stated that the Complainant was involved with a woman named "Marie", "Mary" or "Maria" and they were at Player's Bar, which is located at 4444 W Illinois Ave., on the night of the offense. Witness Hernandez also stated that friends and family of "Marie/Mary/Maria" were with her and the Complainant at Player's Bar. Additional video surveillance obtained also showed the same black Chevy Silverado that pulled up next to the Complainant, leaving Player's Bar and driving in the direction of where the Complainant was walking a few minutes before the shooting.

On November 9, 2022, Detective Rodriguez interviewed Witness Maria Barrientez, who stated she was with the Complainant, her cousin, her brother, Suspect Basilio Tovar, and his wife, Suspect Rubi Esparza, at Player's club. After the Complainant became upset, he left the location on foot. Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, Suspects Tovar and Esparza left the bar. Witness Barrientez described their vehicle as a newer model, 4 door, black Silverado Truck with chrome wheels. Her description of the truck matches the vehicle observed in the surveillance video. Detective Rodriguez asked Witness Barrientez who was driving, and she stated that Suspect Rubi Esparza was driving because she was not drinking the night of the offense and her brother, Suspect Basilio Tovar, was intoxicated so he was in the passenger seat.

A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving away from the offense location shortly after the offense occurred. The suspect vehicle from video surveillance is identical to the images from FLOCK.

On December 16, 2022, Detective Rodriguez obtained phone records for Suspect Tovar. Records showed he was in the area of the offense around the time the offense occurred.

STATE OF TEXAS · AFFIDAVIT FOR ARREST WARRANT · COUNTY OF DALLAS

AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME on the
_____ day of __DEC 1 6 2022__ , 20 _____

Magistrate or Judge in and for Dallas County, Texas

---

MAGISTRATE'S or JUDGE'S DETERMINATION OF PROBABLE CAUSE

On this the _____ day of __DEC 1 6 2022__ , 20 _____
I hereby acknowledge that I have examined the foregoing affidavit
and have determined that probable cause exists for the issuance of
an arrest warrant for the individual accused therein.

Magistrate or Judge in and for Dallas County, Texas

Continuation: Tovar, Basilio (L/M, 2/9/1972) 200502-2022

**STATE OF TEXAS**        **AFFIDAVIT FOR ARREST WARRANT**        **COUNTY OF DALLAS**

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant who, after being duly sworn by me, on oath stated: My name is **Josue Rodriguez #10284** and I am a peace officer of the City of Dallas, Dallas County, Texas. I, the affiant, have good reason and do believe that on or about the **5th** day of **November**, 20 **22**, one (name of suspect) **Esparza, Rubi** did then and there in the City of Dallas, Dallas County, Texas commit the offense of **Murder**, a violation of Section **19.02** of the **Texas Penal Code**, a **F/1**.

Affiant's belief is based upon the following facts and information which Affiant received from:

☒ Affiant's personal investigation of this alleged offense.

☐ _____, a fellow peace officer of the City of Dallas, Dallas County, Texas, who personally participated in the investigation of this alleged offense, providing this information to Affiant, and whose information Affiant believes to be credible.

On November 5, 2022, at approximately 1:00 am, Dallas Police Officers responded to a shooting call at 4323 W Illinois Ave., Dallas, Dallas County, TX. Upon arrival, DFR transported Complainant X. Hernandez to Methodist Hospital, where died from his injuries. Complainant Hernandez sustained one gunshot to his head.

A Witness at the scene stated they observed a newer model black pickup truck pull up to the location. The Witness did not see anyone inside or outside the vehicle but observed the passenger side door open and close. The Witness heard one gunshot then observed the black truck drive off. Video surveillance obtained showed the Complainant walking Northbound on 2300 S Cockrell Hill Rd. on the sidewalk. A newer model, 4 door, black Chevy Silverado with chrome lining, chrome wheels and a bed cover is seen pulling up next to the Complainant then suddenly driving off shortly after.

On November 8, 2022, Detective Rodriguez interviewed Witness R. Hernandez, who is the Complainant's older brother. Witness R. Hernandez stated that the Complainant was involved with a woman named "Marie", "Mary" or "Maria" and they were at Player's Bar, which is located at 4444 W Illinois Ave., on the night of the offense. Witness Hernandez also stated that "Marie/Mary/Maria" were with her and the Complainant at Player's Bar. Additional video surveillance obtained also showed the same black Chevy Silverado that pulled up next to the Complainant, leaving Player's Bar and driving in the direction of where the Complainant was walking a few minutes before the shooting.

On November 9, 2022, Detective Rodriguez interviewed Witness Maria Barrientez, who stated she was with the Complainant, her cousin, her brother, Suspect Basilio Tovar, and his wife, Suspect Rubi Esparza, at Player's club. After the Complainant became upset, he left the location on foot. Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, Suspect Tovar and Esparza left the bar. Witness Barrientez described their vehicle as a newer model, 4 door, black Silverado Truck with chrome wheels. Her description of the truck matches the vehicle observed in the surveillance video. Detective Rodriguez asked Witness Barrientez who was driving, and she stated that Suspect Rubi Esparza was driving because she was not drinking the night of the offense and her brother, Suspect Basilio Tovar, was intoxicated so he was in the passenger seat.

A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving away from the offense location shortly after the offense occurred. The suspect vehicle from video surveillance is identical to the images from FLOCK.

On December 2, 2022, Detective Rodriguez obtained phone records for Suspect Esparza. Records showed she was in the area of the offense around the time the offense occurred.

**STATE OF TEXAS**   **AFFIDAVIT FOR ARREST WARRANT**   **COUNTY OF DALLAS**

WHEREFORE, Affiant requests that an arrest warrant be issued for the above accused individual in accordance with the law.

**AFFIANT**

SUBSCRIBED AND SWORN BEFORE ME on the _____ day of _____ 20 _____

Magistrate or Judge, in and for Dallas County, Texas

## MAGISTRATE'S or JUDGE'S DETERMINATION OF PROBABLE CAUSE

On this the _____ day DEC 1 6 2022 _____ 20 _____
I here by acknowledge that I have examined the foregoing affidavit and have determined that probable cause exists for the issuance of an arrest warrant for the individual accused therein.

Magistrate or Judge in and for Dallas County, Texas

IN JAIL

Complainant: **Esparza, Rubi** 200502-2022

> **"Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, Suspect Tovar and Esparza left the bar."**

**ANSWER:** Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Defendant further objects that the contents of this paragraph are duplicative of the paragraph that follows it.

22.     Defendant Rodriguez wrote in the arrest affidavits for Basilio and Rubi that "Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, Suspect Tovar and Esparza left the bar." This statement is highlighted in orange in the above screenshot of the affidavit.

**ANSWER:**     Admitted.

23.     This is a materially false statement, or alternatively a materially misleading statement which required other information and context, the absence of which constituted a material omission, which was intentionally written by Detective Rodriguez to mislead the Court into issuing a warrant for Basilio's and Rubi's arrest.

**ANSWER:**     Denied.

24.     Detective Rodriguez's statement informed the magistrate reviewing the affidavit supporting the application for the warrant that after failing to locate Mr. Hernandez, Rubi and Basilio left the bar – giving them the opportunity to go shoot Mr. Hernandez at the time the shooting occurred.

**ANSWER:**     Denied as stated.

25.     However, the truth is that Maria Barrientez told Detective Rodriguez that after they

could not find Mr. Hernandez, they then walked outside the front of the bar where Rubi ordered tacos from a taco stand. Mrs. Barrientez then asked her cousin Basilio Tovar for a cigarette, but Basilio told her that the cigarettes were in her car in the parking lot. Mrs. Barrientez went with Basilio to her car in the parking lot and sat in the car smoking a cigarette. Rubi was standing outside of the car eating the tacos she just purchased. It was only after Rubi finished eating the tacos, that she and Basilio then left.

**ANSWER:**    Denied as stated.

26.    This is not the same version of events that Detective Rodriguez portrayed in his affidavit to the reviewing Magistrate. Detective Rodriguez would have the Magistrate believe that upon failing to find Mr. Hernandez behind the bar, Rubi and Basilio immediately left.

**ANSWER:**    Denied as stated

27.    However, Rubi and Basilio remained at the bar while Rubi purchased and ate tacos with the group.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

28.    Had this information been included in the affidavit, it would have detracted from a finding of probable cause because Rubi and Basilio would not have had the same opportunity to go commit the murder at the time when the shooting occurred as they would have had if they immediately left the bar after failing to find Mr. Hernandez – as the affidavit incorrectly portrays.

**ANSWER:**    Denied as stated.

29.    The way that Detective Rodriguez wrote the sentence, it also appears that Rubi and Basilio left the bar to go find Mr. Hernandez – further misleading the Magistrate regarding Rubi and Basilio's motive and intent for leaving the bar.

**ANSWER:**    Denied as stated.

30.     This was a completely misleading statement in the affidavit that omitted materially exculpable information about what time Rubi and Basilio left the bar.

**ANSWER:**   Denied.

31.     Detective Rodriguez knew his statement was false and misleading since he gathered information on when Rubi and Basilio left the bar from Maria Barrientez, and she told him that they stayed at the bar and Rubi got tacos before leaving.

**ANSWER:**   Denied.

32.     Thus, when Detective Rodriguez wrote the affidavit and signed it, he knew this statement was not true and to be omitting materially exculpable information.

**ANSWER:**   Denied.

33.     Detective Rodriguez intentionally wrote his statement in a way to mislead the Magistrate into finding probable cause and warrants would be issued for Basilio's and Rubi's arrests.

**ANSWER:**   Denied.

> **"A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving away from the offense location shortly after the offense occurred."**

**ANSWER:**   Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Defendant further objects that the contents of this paragraph are duplicative of the paragraph that follows it.

34.     Defendant Rodriguez wrote in the arrest affidavits that "A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving away from the offense location shortly after the offense occurred." This statement is highlighted in yellow in the above screenshots of the affidavits.

**ANSWER:**   Admitted.

35.     However, Rubi and Basilio's truck (Texas tag NXT9166) never drove away from the offense location as they were never at the offense location on the night of the murder.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

36.     Rubi and Basilio's truck left Player's Bar and drove home. The path of their truck never took them to the offense location – which occurred in front of the Chevron at 4323 W. Illinois Ave, Dallas, Texas.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

37.     The Magistrate reading this statement would have understood the statement to mean that Rubi and Basilio's truck was leaving the scene of the shooting as that is the offense location. This would clearly be important to whether there was probable cause to arrest the people inside of the truck leaving the scene of the shooting shortly after the shooting occurred.

**ANSWER:**     Denied as stated.

38.     Detective Rodriguez omitted from the affidavit that Rubi and Basilio's truck was not driving away from the offense location but was simply driving away from Player's Bar which was 0.3 miles from the shooting location.

**ANSWER:**     Denied as stated.

39.     The FLOCK system shows the time that a vehicle's image is taken at a particular location. Accordingly, Detective Rodriguez knew that when Rubi's truck was captured by the FLOCK system, it was not "shortly after the offense occurred."

**ANSWER:**     Admitted that the FLOCK system shows the time that a vehicle's image is taken at a particular location. The remaining allegations are denied.

40.     Below is an example of the images of a car Dallas Police see when looking on

FLOCK.[2] To be clear, this is not an image of anything related to this case, but merely for illustrative purposes of what types of photographs and information Detective Rodriguez would have been looking at on FLOCK.



**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

41.     The FLOCK images clearly indicate the date and time a vehicle was at a particular location – down to the seconds.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

42.     The FLOCK images would have shown Detective Rodriguez that Basilio and Rubi's truck was leaving Player's Bar at a time inconsistent with their involvement in the shooting.

---

[2] https://www.wfaa.com/article/news/crime/dallas-police-new-technology-helping-them-catch-violent-criminals/287-537d665c-1ec3-4915-8792-320bbd0ec29f, last visited August 1, 2023.

**ANSWER:**   Denied as stated.

43.   Clearly this changes the probable cause analysis – causing there to be no probable cause based off a truck driving in the area – but not leaving the scene of the shooting – far too long after the shooting for it to be connected – not shortly after the shooting occurred.

**ANSWER:**   Denied.

44.   Detective Rodriguez knew his statement was false and misleading since he gathered information on Rubi and Basilio's truck from the FLOCK system which shows the time their vehicle was at a particular location.

**ANSWER:**   Admitted that Detective Rodriguez gathered information on Rubi and Basilio's truck from the FLOCK system which shows the time their vehicle was at a particular location. The remaining allegations are denied.

45.   Thus, when Detective Rodriguez wrote the affidavit and signed it, he knew this statement was not true.

**ANSWER:**   Denied.

46.   Detective Rodriguez intentionally wrote his statement in a way to mislead the judge so that a finding of probable cause would occur, and a warrant would be issued for Basilio's arrest.

**ANSWER:**   Denied.

**"The suspect vehicle from video surveillance is identical to the images from FLOCK."**

**ANSWER:**   Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Defendant further objects that the contents of this paragraph are duplicative of the paragraph that follows it.

47.     Defendant Rodriguez also wrote in the arrest affidavits for Basilio and Rubi that "The suspect vehicle from video surveillance is identical to the images from FLOCK." This statement is highlighted in blue in the above screenshot of the affidavit.

**ANSWER:**     Admitted.

48.     This is a materially false statement which was intentionally written by Detective Rodriguez to mislead the Court into issuing a warrant for Basilio's and Rubi's arrest.

**ANSWER:**     Denied.

49.     While the suspect vehicle and Basilio and Rubi's truck are both black Chevrolet pickup trucks, there are obvious differences, and they are not "identical" as indicated in the Affidavit.

**ANSWER:**     Denied as stated.

50.     The rims on the wheels and the chrome bars on the sides are patently different.

**ANSWER:**     Denied as stated.

51.     Below is an image of the suspect vehicle from the shooting. The rims on the wheels have five large thick spokes with wide gaps between them.

**ANSWER:**     Defendant lacks information sufficient to either admit or deny whether this particular image below depicts the suspect vehicle from the shooting. All remaining allegations are admitted.

52.     Additionally, the chrome bar on the side of the truck is thick and runs down the middle of the doors.

**ANSWER:**     Admitted.



53.     Contrast this with the below image of Rubi and Basilio's truck. The rims on the wheels have many small spokes with narrow gaps between them.

**ANSWER:**     Defendant lacks information sufficient to either admit or deny whether this particular image below depicts Plaintiffs' truck at any relevant time. The remaining allegations are admitted.

54.     Here, the chrome bar on the side of the truck is narrow and runs along the bottom of the doors.

**ANSWER:**     Denied.



55.      Additionally, below is a rear view of Rubi and Basilio's truck. Their truck has a back sliding glass window on the rear glass. The suspect truck does not.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about whether this particular photo depicts Plaintiffs' truck at any relevant time. Admitted that the truck depicted below has a sliding glass window on the rear glass. The remaining allegations in this paragraph are admitted.

56.      Additionally, Basilio and Rubi's rear bumper has steps on both corners. The suspect vehicle does not.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief about whether Plaintiffs' truck had steps on both corners of the rear bumper. The remaining allegations in this paragraph are admitted.



57.     Accordingly, the statement that "The suspect vehicle from video surveillance is identical to the images from FLOCK" was a false statement because the two trucks are not "identical" but have obvious differences that indicate they are not the same truck.

**ANSWER:**     Denied.

58.     Detective Rodriguez knew this due to looking at the suspect's truck in the surveillance video and looking at FLOCK images of Rubi and Basilio's truck.

**ANSWER:**     Denied.

59.     Below is that same example of the images of a car Dallas Police see when looking on FLOCK.[3]



**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

60.     The images clearly depict a substantial portion of the car – not just the license plate.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

61.     While the suspect truck and Rubi and Basilio's truck are both black Chevy pickup

---

3   https://www.wfaa.com/article/news/crime/dallas-police-new-technology-helping-them-catch-violent-criminals/287-537d665c-1ec3-4915-8792-320bbd0ec29f, last visited August 1, 2023.

trucks – that is where the similarity ends.

**ANSWER:**    Denied.

62.    Detective Rodriguez was filling out an affidavit for an arrest in a murder investigation – these obvious differences were pieces of material exculpatory information that were omitted from the affidavit.

**ANSWER:**    Denied.

63.    These differences are clearly noticeable regardless of the angle Detective Rodriguez was looking at the truck as the differences are all over the trucks.

**ANSWER:**    Denied.

64.    The corrected sentence in the affidavit should have read, "The suspect vehicle from video surveillance is not identical to the images from FLOCK because the rims on the trucks are different, the truck in the FLOCK image has a rear glass window but the suspect vehicle in the video surveillance does not, the bumper on the vehicle in the FLOCK image has steps on the corners but the suspect vehicle in the video surveillance does not, the truck in the FLOCK image has a chrome running bar on the bottom of the doors but the suspect vehicle in the video surveillance has a chrome running bar much higher up in the middle of the doors."

**ANSWER:**    Denied.

65.    When adding in the omitted information, it is clear that probable cause would not have been found based off of these being different trucks – in conjunction with the corrected description of where the truck was actually going and coming from and that it was not seen until too long after the shooting for it to have been leaving the scene of the shooting.

**ANSWER:**    Denied.

66.    Thus, when Detective Rodriguez wrote the affidavit and signed it, he knew this statement was not true as it is obvious that the two trucks are not identical.

**ANSWER:**   Denied.

> **"On December 2, 2022, Detective Rodriguez obtained phone records for Suspect Tovar [and Suspect Esparza]. Records showed he [and she] was in the area of the offense around the time the offense occurred."**

**ANSWER:**   Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Defendant further objects that the contents of this paragraph are duplicative of the paragraph that follows it.

67.     Detective Rodriguez also wrote in the arrest affidavits for Basilio and Rubi that "On December 2, 2022, Detective Rodriguez obtained phone records for Suspect Tovar [and Suspect Esparza]. Records showed he [and she] was in the area of the offense around the time the offense occurred." These statements are highlighted in pink in the above screenshots of the affidavits.

**ANSWER:**   Admitted.

68.     This is a materially false statement, or alternatively a materially misleading statement which required other information and context, the absence of which constituted a material omission, which was intentionally written by Detective Rodriguez to mislead the Court into issuing a warrant for Basilio's arrest.

**ANSWER:**   Denied.

69.     This statement is materially false and highly misleading in that it would have the reader (the judge) believe that Basilio's and Rubi's phones placed them at the shooting.

**ANSWER:**   Denied.

70.     However, Basilio and Rubi were at Player's Bar – 0.3 miles away from the shooting location – and never went to the shooting location that night.

**ANSWER:**   Admitted that on the night of the shooting Basilio and Rubi were at Player's Bar, which is located 0.3 miles away from the shooting location. Defendant lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

71.     Detective Rodriguez omitted from the affidavit that the reason Basilio's and Rubi's phones showed they were "in the area" was that they were at Player's Bar that night. Detective Rodriguez omitted that this phone data does not place Basilio or Rubi at the scene of the shooting and omitted how large of an area the phone data placed Basilio or Rubi.

**ANSWER:**   Denied as stated.

72.     Instead, Detective Rodriguez wrote a misleading statement which required context that he omitted knowing that if he simply wrote that Basilio's and Rubi's phone data placed them at Player's Bar that night it would not be enough for probable cause.

**ANSWER:**   Denied.

73.     Clearly, when adding this omitted information, this sentence does not support probable cause. This is especially true in conjunction with adding in the differences in the vehicles and the fact that Rubi and Basilio's truck never went to the location of the shooting and did not drive away from the location of the shooting shortly after the shooting – or any other time.

**ANSWER:**   Denied.

74.     Thus, when Detective Rodriguez wrote the affidavit and signed it, he knew this statement to be misleading and require context explaining the statement.

**ANSWER:**   Denied.

75.     Detective Rodriguez knew this due to understanding that the area of the phone records was not confined to the location of the shooting and that it would show Basilio and Rubi "in the area" if Basilio and Rubi were at Player's Bar, which had been corroborated by witnesses.

**ANSWER:**   Denied as stated.

76.     The omitted and false facts concerning Basilio and Rubi's truck being at the scene and leaving the scene of the shooting, were critical and material to the Court's analysis of whether or

not there was probable cause.

**ANSWER:**   Denied.

77.     As a direct and proximate result of Defendant Rodriguez's actions, Basilio and Rubi were wrongly arrested for the crime of murder – a first degree felony.

**ANSWER:**   Admitted that Plaintiffs were arrested for the crime of murder, which is a first degree felony. The remaining allegations are denied as stated.

78.     Further support for the arrest affidavit being based on false and misleading information was that charges against Basilio and Rubi were never even filed and Basilio and Rubi were released from custody without needing to post bond.

**ANSWER:**   Denied as stated.

79.     As a direct and proximate result of Detective Rodriguez's actions in causing Plaintiff Basilio Tovar to be arrested for murder – Basilio was arrested, was incarcerated in the Dallas County Jail on a $250,000 bond with no idea when or if he would be released for eleven days away from his wife and two children, spent Christmas in jail away from his wife and two children, lost wages from time missed at work, suffered a demotion and reduction in pay at his job upon return to work, suffered irreparable harm to his reputation, suffered embarrassment and mental anguish, was forced to hire a criminal defense attorney, and had his family truck and cell phone seized.

**ANSWER:**   Admitted that Plaintiff Basilio Tovar was arrested for murder and held in the Dallas County jail on a $250,000 bond. The remaining allegations are denied.

80.     As a result of Detective Rodriguez violating Basilio's constitutional rights, Basilio suffered injuries and damages in the form of emotional distress, torment, and mental anguish, deprivation of his liberty, and losses of income and earning capacity.

**ANSWER:**   Denied.

81.     As a direct and proximate result of Detective Rodriguez's actions in causing

Plaintiff Rubi Esparza to be arrested for murder – Rubi was arrested, was incarcerated in the Dallas County Jail on a $1,000,000 bond with no idea when or if she would be released for ten days away from her husband and two children, spent Christmas in jail away from her husband and two children, lost wages from time missed at work, was fired from her job, was unable to obtain new employment due to the murder arrest on her record, suffered irreparable harm to her reputation, suffered embarrassment and mental anguish, was forced to hire a criminal defense attorney, and had her family truck and cell phone seized.

**ANSWER:**   Admitted that Plaintiff Rubi Esparza was arrested for murder and held in the Dallas County jail on a $1,000,000 bond. The remaining allegations are denied.

82.   As a result of Detective Rodriguez violating Rubi's constitutional rights, Rubi suffered injuries and damages in the form of emotional distress, torment, and mental anguish, deprivation of her liberty, and losses of income and earning capacity.

**ANSWER:**   Denied.

83.   These injuries and damages were not caused by any other means.

**ANSWER:**   Denied.

84.   Defendant Rodriguez was at all times acting under color of law as he was acting in his capacity as a detective with the Dallas Police Department when he submitted an affidavit for an arrest warrant to be signed by a judge for the arrest of both Basilio and Rubi.

**ANSWER:**   Admitted.

## IV.

## CAUSES OF ACTION

### Count One

### False Arrest
### On Behalf of Plaintiffs Basilio Tovar and Rubi Esparza
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Rodriguez

85.     The "right to be free from arrest without probable cause is a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994).

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

86.     The Supreme Court held that an officer may violate the Fourth Amendment when, in connection with an application for a warrant, he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth" that results in a warrant being issued without probable cause. *Franks v. Delaware*, 438 U.S. 154, 155 (1978).

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

87.     The Fifth Circuit extended the *Franks* rule to arrest warrants and requires an additional step that asks "whether 'any reasonably competent officer possessing the information each officer had at the time [s]he swore [her] affidavit could have concluded that a warrant should issue.'" *Jones v. Perez*, 790 F. App'x 576, 580 (5th Cir. 2019) (quoting *Freeman v. Cnty. Of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000)).

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

88.     The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants. *See Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (en banc).

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

89.     The Fifth Circuit finds it necessary to hold officers to a reasonable officer standard

and has clarified that "an officer who makes knowing and intentional *omissions* that result in a warrant being issued without probable cause is also liable under *Franks*." *Melton*, 875 F.3d at 264 (quoting *Michalik v. Hermann*, 442 F.3d 252, 258 n.5 (5th Cir. 2005)) (internal quotation marks omitted) (emphasis original).

**ANSWER:**      This paragraph contains no factual allegations, and thus no response is required.

90.      The Fifth Circuit has also found that a Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application. *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006).

**ANSWER:**      This paragraph contains no factual allegations, and thus no response is required.

91.      Likewise, the Fifth Circuit explained that the intentional or reckless omission of material facts from a warrant application may also amount to a Fourth Amendment violation. *Id*.; *See Hale v. Fish*, 899 F.2d 390, 400 n. 3 (5th Cir.1990).

**ANSWER:**      This paragraph contains no factual allegations, and thus no response is required.

92.      "To defeat the affirmative defense of qualified immunity as to his Fourth Amendment-based false arrest claim under § 1983, [Plaintiff] Jones must satisfy the following elements: (1) the affiant included false information in or omitted material information from the affidavit and that [he] did so knowingly or with a reckless disregard of the truth; (2) the reconstructed affidavit (excluding the false information and including the omitted information) would not establish probable cause to arrest; and (3) to overcome qualified immunity, Plaintiff [ ] must show "that [no] reasonably competent officer possessing the information that the [affiant] had at the time [he] swore [his] affidavit could have concluded that a warrant should issue." *Jones v. Perez*, No. 3:16-CV-2835-D, 2017 WL 4238700, at *6 (N.D. Tex. Sept. 25, 2017), aff'd, 790 F. App'x 576 (5th Cir. 2019); quoting *Freeman v. Cnty of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000).

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

93.     "To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause*." Kohler*, 470 F.3d at 1113.

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

94.     Probable cause cannot exist where the affidavit supporting a warrant contains material false statements or omissions that are deliberate falsehoods or evidence a reckless disregard for the truth. *DeLeon v. City of Dallas*, 345 Fed.Appx. 21, 23 (5th Cir. 2009).

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

95.     If the officer, acting intentionally or with reckless disregard for the truth, fails to provide a magistrate with information that was critical to a finding of probable cause, then the officer may be held liable.  *Hale*, 899 F.2d at 400.

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

96.     The Fifth Circuit has explained that "[i]f the facts omitted from an affidavit are "clearly critical" to a finding of probable cause, then recklessness may be inferred from the proof of the omission itself." *Hale*, 899 F.2d at 400.

**ANSWER:**     This paragraph contains no factual allegations, and thus no response is required.

## **Material Omissions in Reckless Disregard for the Truth**

97.     A Probable Cause Affidavit for Basilio's arrest was issued with Defendant Rodriguez listed as the affiant.

**ANSWER:**     Admitted.

98.     Defendant Rodriguez signed the arrest affidavit and swore to the validity of the facts included in it.

**ANSWER:**     Admitted that Detective Rogriguez signed the arrest affidavit under oath. The remaining allegations are denied.

99.     The following is a screenshot of the affidavit sworn to by Defendant Rodriguez for the arrest of Basilio for the crime of murder, a violation of Section 19.02 of the Texas Penal Code, a first-degree felony.

**ANSWER:**     Admitted.

100.     Material false statements, misleading statements, and omissions have been highlighted in orange, yellow, blue, and pink.  Each of those statements will be addressed.

**ANSWER:**     Admitted that certain statements have been highlighted in various colors. The remaining allegations are denied.

STATE OF TEXAS                    AFFIDAVIT FOR ARREST WARRANT                    COUNTY OF DALLAS

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant who after being duly sworn by me, on oath stated: My name is Jesus Rodriguez #10284 and I am a peace officer of the City of Dallas, Dallas County, Texas.  I, the affiant, have good reason and do believe that on or about the 5th day of November, 20 22, one (name of suspect) Tovar, Basilio (L/M, 2/9/1972) did then and there in the City of Dallas, Dallas County, Texas commit the offense of Murder, a violation of Section 19.02 of the Texas Penal Code, a F/1.

Affiant's belief is based upon the following facts and information which Affiant received from:
☒ Affiant's personal investigation of this alleged offense.
☐ ____, a fellow peace officer of the City of Dallas, Dallas County, Texas, who personally participated in the investigation of this alleged offense, providing this information to Affiant, and whose information Affiant believes to be credible.

On November 5, 2022, at approximately 1:00 am, Dallas Police Officers responded to a shooting call at 4323 W Illinois Ave., Dallas, Dallas County, TX. Upon arrival, DFR transported Complainant X. Hernandez to Methodist Hospital, where died from his injuries. Complainant Hernandez sustained one gunshot to his head.

A Witness at the scene stated they observed a newer model black pickup truck pull up to the location. The Witness did not see anyone inside or outside the vehicle but observed the passenger side door open and close. The Witness heard one gunshot then observed the black truck drive off. Video surveillance obtained showed the Complainant walking Northbound on 2300 S Cockrell Hill Rd. on the sidewalk. A newer model, 4 door, black Chevy Silverado with chrome lining, chrome wheels and a bed cover is seen pulling up next to the Complainant then suddenly driving off shortly after.

On November 8, 2022, Detective Rodriguez interviewed Witness R. Hernandez, who is the Complainant's older brother. Witness R. Hernandez stated that the Complainant was involved with a woman named "Marie", "Mary" or "Maria" and they were at Player's Bar, which was located at 4444 W Illinois Ave., on the night of the offense. Witness Hernandez also stated that friends and family of "Marie/Mary/Maria" were with her and the Complainant at Player's Bar. Additional video surveillance obtained also showed the same black Chevy Silverado that pulled up next to the Complainant, leaving Player's Bar and driving in the direction of where the Complainant was walking a few minutes before the shooting.

On November 9, 2022, Detective Rodriguez interviewed Witness Maria Barrientez, who stated she was with the Complainant, her cousin, her brother, Suspect Basilio Tovar, and his wife, Suspect Rubi Esparza, at Player's club. After the Complainant became upset, he left the location on foot. Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, Suspects Tovar and Esparza left the bar. Witness Barrientez described their vehicle as a newer model, 4 door, black Silverado Truck with chrome wheels. Her description of the truck matches the vehicle observed in the surveillance video. Detective Rodriguez asked Witness Barrientez who was driving, and she stated that Suspect Rubi Esparza was driving because she was not drinking the night of the offense and her brother, Suspect Basilio Tovar, was intoxicated so he was in the passenger seat.

A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving away from the offense/location shortly after the offense occurred. The suspect vehicle from video surveillance is identical to the images from FLOCK.

On December 16, 2022, Detective Rodriguez obtained phone records for Suspect Tovar. Records showed he was in the area of the offense around the time the offense occurred.

STATE OF TEXAS                 AFFIDAVIT FOR ARREST WARRANT         COUNTY OF DALLAS

AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME on the
_____, day of __DEC 1 6 2022__., 20 ____

Magistrate or Judge in and for Dallas County, Texas

MAGISTRATE'S or JUDGE'S DETERMINATION OF PROBABLE CAUSE

On this the _____ day of __DEC 1 6 2022__ 20 ____
I hereby acknowledge that I have examined the foregoing affidavit
and have determined that probable cause exists for the issuance of
an arrest warrant for the individual accused therein.

Magistrate or Judge in and for Dallas County, Texas

IN JAIL

Continuation: Tovar, Basilio (L/M, 2/9/1972), 200502-2022

101.    A Probable Cause Affidavit for Rubi's arrest was issued with Defendant Rodriguez listed as the affiant.

**ANSWER:**    Admitted.

102.    Defendant Rodriguez signed the arrest affidavit and swore to the validity of the facts included in it.

**ANSWER:**    Admitted that Detective Rogriguez signed the arrest affidavit under oath. The remaining allegations are denied.

103.    The following is a screenshot of the affidavit sworn to by Defendant Rodriguez for the arrest of Rubi for the crime of murder, a violation of Section 19.02 of the Texas Penal Code, a first-degree felony.

**ANSWER:**    Admitted.

104.    Material false statements, misleading statements, and omissions have been highlighted in orange, yellow, blue, and pink. Each of those statements will be addressed.

**ANSWER:**    Admitted that certain statements have been highlighted in various colors. The remaining allegations are denied.

**STATE OF TEXAS**               **AFFIDAVIT FOR ARREST WARRANT**               **COUNTY OF DALLAS**

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant who, after being duly sworn by me, on oath stated: My name is **Josue Rodriguez #10284** and I am a peace officer of the City of Dallas, Dallas County, Texas. I, the affiant, have good reason and do believe that on or about the **5th** day of **November**, 20 **22**, one (name of suspect) **Esparza, Rubi** did then and there in the City of Dallas, Dallas County, Texas commit the offense of **Murder**, a violation of Section **19.02** of the **Texas Penal Code**, a **F/1**.

Affiant's belief is based upon the following facts and information which Affiant received from:

☒ Affiant's personal investigation of this alleged offense.

☐ _____, a fellow peace officer of the City of Dallas, Dallas County, Texas, who personally participated in the investigation of this alleged offense, providing this information to Affiant, and whose information Affiant believes to be credible.

On November 5, 2022, at approximately 1:00 am, Dallas Police Officers responded to a shooting call at 4323 W Illinois Ave., Dallas, Dallas County, TX. Upon arrival, DFR transported Complainant X. Hernandez to Methodist Hospital, where died from his injuries. Complainant Hernandez sustained one gunshot to his head.

A Witness at the scene stated they observed a newer model black pickup truck pull up to the location. The Witness did not see anyone inside or outside the vehicle but observed the passenger side door open and close. The Witness heard one gunshot then observed the black truck drive off. Video surveillance obtained showed the Complainant walking Northbound on 2300 S Cockrell Hill Rd. on the sidewalk. A newer model, 4 door, black Chevy Silverado with chrome lining, chrome wheels and a bed cover is seen pulling up next to the Complainant then suddenly driving off shortly after.

On November 8, 2022, Detective Rodriguez interviewed Witness R. Hernandez, who is the Complainant's older brother. Witness R. Hernandez stated that the Complainant was involved with a woman named "Marie", "Mary" or "Maria" and they were at Player's Bar, which is located at 4444 W Illinois Ave., on the night of the offense. Witness Hernandez also stated that friends and family of "Marie/Mary/Maria" were with her and the Complainant at Player's Bar. Additional video surveillance obtained also showed the same black Chevy Silverado that pulled up next to the Complainant, leaving Player's Bar and driving in the direction of where the Complainant was walking a few minutes before the shooting.

On November 9, 2022, Detective Rodriguez interviewed Witness Maria Barrientez, who stated she was with the Complainant, her cousin, her brother, Suspect Basilio Tovar, and his wife, Suspect Rubi Esparza, at Player's club. After the Complainant became upset, he left the location on foot. Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, Suspect Tovar and Suspect Esparza left the bar. Witness Barrientez described their vehicle as a newer model, 4 door, black Silverado Truck with chrome wheels. Her description of the truck matches the vehicle observed in the surveillance video. Detective Rodriguez asked Witness Barrientez who was driving, and she stated that Suspect Rubi Esparza was driving because she was not drinking the night of the offense and her brother, Suspect Basilio Tovar, was intoxicated so he was in the passenger seat.

A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving away from the offense location shortly after the offense occurred. The suspect vehicle from video surveillance is identical to the images from FLOCK.

On December 2, 2022, Detective Rodriguez obtained phone records for Suspect Esparza. Records showed she was in the area of the offense around the time the offense occurred.

STATE OF TEXAS                AFFIDAVIT FOR ARREST WARRANT        COUNTY OF DALLAS

WHEREFORE, Affiant requests that an arrest warrant be issued for the above accused individual in accordance with the law.

AFFIANT

SUBSCRIBED AND SWORN BEFORE ME on the DEC 1 6 2022

_____ day of _____ 20 _____

Magistrate or Judge, in and for Dallas County, Texas

MAGISTRATE'S or JUDGE'S DETERMINATION OF PROBABLE CAUSE

On this the _____ day DEC 1 6 2022 _____ 20 _____
I hereby acknowledge that I have examined the foregoing affidavit
and have determined that probable cause exists for the issuance of
an arrest warrant for the individual accused therein.

Magistrate or Judge in and for Dallas County, Texas

IN JAIL

Defendant: **Esparza, Rubi** 200502-2022

**"Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, Suspect Tovar and Esparza left the bar."**

**ANSWER:**    Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Defendant further objects that the contents of this paragraph are duplicative of the paragraph that follows it.

105.    Defendant Rodriguez wrote in the arrest affidavits for Basilio and Rubi that "Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, Suspect Tovar and Esparza left the bar." This statement is highlighted in orange in the above screenshots of the affidavits.

**ANSWER:**    Admitted.

106.    As explained above in paragraphs 22-33, this is a materially false statement, or alternatively a materially misleading statement which required other information and context, the absence of which constituted a material omission, which was intentionally written by Detective Rodriguez to mislead the Court into issuing warrants for Basilio's and Rubi's arrests.

**ANSWER:**    Denied.

107.    These were critical facts and if these critical omitted facts were inserted into the affidavit, then the reconstructed affidavit would not support a finding of probable cause*." Kohler*, 470 F.3d at 1113.

**ANSWER:**    Denied.

108.     Reconstructed arrest affidavits including this materially exculpatory information would have instead read: Witness Barrientez stated that she went to look for the Complainant outside with her cousin, Suspect Tovar and Suspect Esparza, but they could not find him. After not being able to find the Complainant, they then walked outside the front of the bar where Rubi ordered tacos from a taco stand. Mrs. Barrientez then asked her cousin for a cigarette, but her cousin told her that the cigarettes were in her car in the parking lot. Mrs. Barrientez went with her cousin to her car in the parking lot and sat in the car smoking a cigarette. Rubi was standing outside of the car eating the tacos she just purchased. After Rubi finished eating the tacos, she and Basilio then left. Due to the time that Suspect Tovar and Suspect Esparza spent at the bar while Suspect Esparza ordered and ate tacos, they did not leave Player's Bar in time to have been responsible for the shooting.

**ANSWER:**   Denied.

**"A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving away from the offense location shortly after the offense occurred."**

**ANSWER:**    Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Defendant further objects that the contents of this paragraph are duplicative of the paragraph that follows it.

109.     Defendant Rodriguez wrote in the arrest affidavits for Basilio and Rubi that "A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving away from the offense location shortly after the offense occurred." This statement is highlighted in yellow in the above screenshots of the

affidavits.

**ANSWER:**   Admitted.

110.   As explained above in paragraphs 34-42, this is a materially false statement, or alternatively a materially misleading statement which required other information and context, the absence of which constituted a material omission, which was intentionally written by Detective Rodriguez to mislead the Court into issuing warrants for Basilio's and Rubi's arrests.

**ANSWER:**   Denied

111.   If the sentence was changed to be "A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving on roads near the offense location but never actually going to the offense location shortly after the offense occurred" this would obviously alter the judge's analysis of whether probable cause existed for Basilio or Rubi, as simply driving in the area of town where a shooting occurred but not at the shooting location is completely different than "driving away from the offense location shortly after the offense occurred."

**ANSWER:**   Denied as stated.

112.   If the sentence was changed to reflect the truth it would have said "A check of the FLOCK (license plate reader) system showed a 2016 black Chevy Silverado (Texas tag NXT9166, which is registered to Rubi Esparza) driving on roads near the offense location but never actually going to the offense location or driving away from the offense location too long after the shooting for the truck to be connected."

**ANSWER:**   Denied.

113.   Clearly this changes the probable cause analysis – causing there to be no probable cause based off a truck driving in the area – but not leaving the scene of the shooting – far too long after the shooting for it to be connected –not shortly after the shooting occurred.

**ANSWER:**    Denied.

114.    Detective Rodriguez knew his statement was false and misleading since he gathered information on Rubi and Basilio's truck from the FLOCK system which shows the time their vehicle was at a particular location.

**ANSWER:**    Denied.

115.    Thus, when Detective Rodriguez wrote the affidavit and signed it he knew this statement not to be true.

**ANSWER:**    Denied.

116.    Detective Rodriguez intentionally wrote his statement in a way to mislead the judge so that a finding of probable cause would occur and warrants would be issued for Basilio's and Rubi's arrests.

**ANSWER:**    Denied.

117.    These were critical facts and if these critical omitted facts were inserted into the affidavits, then the reconstructed affidavits would not support a finding of probable cause*." Kohler*, 470 F.3d at 1113.

**ANSWER:**    Denied.

**"The suspect vehicle from video surveillance is identical to the images from FLOCK."**

**ANSWER:**    Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Defendant further objects that the contents of this paragraph are duplicative of the paragraph that follows it.

118.    Defendant Rodriguez wrote in the arrest affidavits for Basilio and Rubi that "The suspect vehicle from video surveillance is identical to the images from FLOCK." This statement is

highlighted in blue in the above screenshots of the affidavits.

**ANSWER:**     Admitted.

119.     As explained above in paragraphs 47-63, this is a materially false statement which was intentionally written by Detective Rodriguez to mislead the Court into issuing warrants for Basilio's and Rubi's arrests.

**ANSWER:**     Denied.

120.     The corrected sentence in the affidavits should have read, "The suspect vehicle from video surveillance is not identical to the images from FLOCK because the rims on the trucks are different, the truck in the FLOCK image has a rear glass window but the suspect vehicle in the video surveillance does not, the bumper on the vehicle in the FLOCK image has steps on the corners but the suspect vehicle in the video surveillance does not, the truck in the FLOCK image has a chrome running bar on the bottom of the doors but the suspect vehicle in the video surveillance has a chrome running bar much higher up in the middle of the doors."

**ANSWER:**     Denied.

121.     When adding in the omitted information, it is clear that probable cause would not have been found based off of these being different trucks – in conjunction with the corrected description of where the truck was actually going and coming from and that it was not seen until too long after the shooting for it to have been leaving the scene of the shooting.

**ANSWER:**     Denied.

122.     Thus, when Detective Rodriguez wrote the affidavits and signed them, he knew this statement was not true as it is obvious that the two trucks are not identical.

**ANSWER:**     Denied.

123.     These were critical facts and if these critical omitted facts were inserted into the affidavits, then the reconstructed affidavits would not support a finding of probable cause*." Kohler*,

470 F.3d at 1113.

**ANSWER:**     Denied.

> **"On December 2, 2022, Detective Rodriguez obtained phone records for Suspect Tovar [and Esparza]. Records showed he [and she] was in the area of the offense around the time the offense occurred."**

**ANSWER:**     Defendant objects that this unnumbered paragraph violates Federal Rule of Civil Procedure 10(b), which requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Defendant further objects that the contents of this paragraph are duplicative of the paragraph that follows it.

124.     Detective Rodriguez wrote in the arrest affidavit for Basilio that "On December 2, 2022, Detective Rodriguez obtained phone records for Suspect Tovar. Records showed he was in the area of the offense around the time the offense occurred." This statement is highlighted in pink in the above screenshot of the affidavit associated with Basilio.

**ANSWER:**     Admitted.

125.     Detective Rodriguez wrote in the arrest affidavit for Rubi that "On December 2, 2022, Detective Rodriguez obtained phone records for Suspect Esparza. Records showed she was in the area of the offense around the time the offense occurred." This statement is highlighted in pink in the above screenshot of the affidavit associated with Rubi.

**ANSWER:**     Admitted.

126.     As explained above in paragraphs 67-73, this is a materially false statement, or alternatively a materially misleading statement which required other information and context, the absence of which constituted a material omission, which was intentionally written by Detective Rodriguez to mislead the Court into issuing warrants for Basilio's and Rubi's arrests.

**ANSWER:**   Denied.

127.   The corrected sentence in the affidavits should have read, "On December 2, 2022, Detective Rodriguez obtained phone records for Suspect Tovar [and Esparza]. Records showed he [and she] was in the area of the offense around the time the offense occurred. It was corroborated by witnesses that he [and she] was at Player's Bar – 0.3 miles away from the shooting that night which would explain why his [and her] phone was in the area. These phone records do not place Suspect Tovar [or Esparza] at the scene of the shooting or even at the location where the shooting occurred because the area I am referring to is large enough to encompass other locations such as Player's Bar where Suspect Tovar [and Esparza] was located."

**ANSWER:**   Deneid.

128.   Clearly, when adding this omitted information, this sentence does not support probable cause. This is especially true in conjunction with adding in the differences in the vehicles and the fact that Rubi and Basilio's truck never went to the location of the shooting and did not drive away from the location of the shooting shortly after the shooting – or any other time.

**ANSWER:**   Denied.

129.   Thus, when Detective Rodriguez wrote the affidavits and signed them, he knew this statement to be misleading and require context explaining the statement.

**ANSWER:**   Denied.

130.   Detective Rodriguez knew this due to understanding that the area of the phone records was not confined to the location of the shooting and that it would show Basilio and Rubi "in the area" if Basilio and Rubi were at Player's Bar, which had been corroborated by witnesses.

**ANSWER:**   Denied as stated

131.   These were critical facts and if these critical omitted facts were inserted into the affidavits, then the reconstructed affidavits would not support a finding of probable cause*." Kohler*,

470 F.3d at 1113.

**ANSWER:**    Denied.

**Basilio and Rubi were Wrongful Arrested**

132.    The omitted and false facts concerning Basilio and Rubi's truck being at the scene and leaving the scene of the shooting, were critical and material to the Court's analysis of whether or not there was probable cause.

**ANSWER:**    Denied.

133.    These omitted facts are clearly critical to a finding of probable cause; thus, Defendant Rodriguez's recklessness may be inferred from the proof of the omission itself. *Hale*, 899 F.2d at 400.

**ANSWER:**    Denied.

134.    As a direct and proximate result of Defendant Rodriguez's actions, Basilio and Rubi were wrongly arrested for the crime of Murder – a first degree felony.

**ANSWER:**    Denied.

135.    Further support for the arrest affidavit being based on false and misleading information was that charges against Basilio and Rubi were never even filed and Basilio and Rubi were released from custody without needing to post bond.

**ANSWER:**    Denied.

136.    As a direct and proximate result of Detective Rodriguez's actions, outlined in this Count, in causing Plaintiff Basilio Tovar to be arrested for Murder – Basilio was arrested, was incarcerated in the Dallas County Jail on a $250,000 bond with no idea when or if he would be released for eleven days away from his wife and two children, spent Christmas in jail away from his wife and two children, lost wages from time missed at work, suffered a demotion and reduction in pay at his job upon return, suffered irreparable harm to his reputation, suffered embarrassment

and mental anguish, was forced to hire a criminal defense attorney, and had his family truck and cell phone seized.

**ANSWER:**   Admitted that Plaintiff Basilio Tovar was arrested for murder and held in the Dallas County jail on a $250,000 bond. The remaining allegations are denied.

137.   As a direct and proximate result of Detective Rodriguez's actions, outlined in this Count, in causing Plaintiff Rubi Esparza to be arrested for murder – Rubi was arrested, was incarcerated in the Dallas County Jail on a $1,000,000 bond with no idea when or if she would be released for ten days away from her husband and two children, spent Christmas in jail away from her husband and two children, lost wages from time missed at work, was fired from her job, was unable to obtain new employment due to the murder arrest on her record, suffered irreparable harm to her reputation, suffered embarrassment and mental anguish, was forced to hire a criminal defense attorney, and had her family truck and cell phone seized.

**ANSWER:**   Admitted that Plaintiff Rubi Esparza was arrested for murder and held at the Dallas County jail on a $1,000,000 bond. The remaining allegations are denied.

138.   As a result of Detective Rodriguez violating Basilio's and Rubi's constitutional rights, as outlined in this Count, Basilio and Rubi suffered injuries and damages in the form of emotional distress, torment, and mental anguish, deprivation of their liberty, and losses of income and earning capacity.

**ANSWER:**   Denied.

139.   These injuries and damages were not caused by any other means.
.
**ANSWER:**   Denied.

### V.
### PUNITIVE DAMAGES

140.   Plaintiffs repeat and re-allege each and every allegation contained in the above

paragraphs as if fully repeated herein.

**ANSWER:**   Defendant reincorporates his answers to the preceding paragraphs as if fully set forth herein.

141.   When viewed objectively from the standpoint of Defendant Rodriguez, and, at the time of the occurrence, said Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to others.

**ANSWER:**   Denied.

142.   As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Rodriguez, which was recklessly or callously indifferent to Plaintiffs' protected rights, Plaintiffs are entitled to recover punitive damages in an amount within the jurisdictional limits of this Court against Defendant Rodriguez.

**ANSWER:**   Denied.

## VI.
## DAMAGES

143.   Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

**ANSWER:**   Defendant reincorporates his answers to the preceding paragraphs as if fully set forth herein.

144.   Plaintiffs' injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant Rodriguez's conduct. As a result, Plaintiffs are entitled to recover all actual damages allowed by law.

**ANSWER:**   Denied.

145.   Plaintiffs contend Defendant Rodriguez's conduct constitutes malice, evil intent or reckless or callous indifference to Plaintiffs' constitutionally protected rights. Thus, Plaintiffs are

entitled to punitive damages against Defendant Rodriguez.

**ANSWER:**   Denied.

146.    As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiffs were forced to suffer:

   a.  harm to reputation in the past and future;
   b.  lost wages, fringe benefits, and diminished earning capacity;
   c.  Emotional distress, torment, and mental anguish;
   d.  Deprivations of their liberty;
   e.  pre-judgment and post-judgment interest;
   f.  attorney's fees and other costs associated with defending in the criminal case;
   g.  future costs associated with expunging their record if they are so able; and
   h.  such other and further relief, general and special, legal and equitable, to which Plaintiffs may show themselves justly entitled.

**ANSWER:**   Denied.

147.    Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiffs seek to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

**ANSWER:**   Denied.

## VII.
## ATTORNEY'S FEES

148.    If Plaintiffs prevail in this action, by settlement or otherwise, Plaintiffs are entitled to and hereby demand attorney's fees under 42 U.S.C. § 1988.

**ANSWER:**   Denied.

## VIII.
## JURY REQUEST

149.    Plaintiffs respectfully request a jury trial.

**ANSWER:**   This paragraph contains no factual allegations, and thus no response is required.

## IX.
## DEFENSES

1.      Defendant pleads that Plaintiffs have failed to state a claim upon which relief can be granted against him.

2.      Defendant affirmatively pleads his entitlement to qualified immunity. Defendant pleads that at all times relevant to the incident giving rise to Plaintiffs' claims, he was a government official, to wit, a Texas certified peace officer employed by the Dallas Police Department; that he is currently and was employed at the time of the incidents in question by the City of Dallas; and that he is entitled to qualified immunity from suit and from damages in the present cause.

3.      At all times relevant to the incidents in question, Defendant was performing discretionary functions and acting within and pursuant to the scope of his employment and authority as a police officer employed by the Dallas Police Department.

4.      Defendant acted without malice, and without an intent to deprive Plaintiffs of any legally protected rights.

5.      Defendant acted with a reasonable good faith belief that his actions were lawful, and proper; and that he did not violate clearly established law of which a reasonable person would have known.

6.      Defendant affirmatively pleads that when he interviewed Basilio Tovar, Mr. Tovar viewed video footage of the murder and agreed and confirmed that the truck used in the murder looked like his truck.

7.      Defendant affirmatively pleads that after Plaintiffs' arrest their criminal defense attorney provided to him previously unknown information that tended to exonerate Plaintiffs and incriminated a previously unknown suspect. Upon receipt of that information, Defendant immediately acted to verify the new information. Upon verifying the new information, Defendant immediately

took action to secure Plaintiffs' release from jail.

8.    Defendant affirmatively pleads that at the time he signed the affidavits in question, he reasonably believed that all statements therein were true and accurate, that no material information had been omitted, and that probable cause existed for Plaintiffs' arrests.

9.    Defendant affirmatively pleads that he did not act with a reckless disregard for the truth at any time.

10.   At all times Defendant acted in a manner consistent with all applicable laws and binding precedent.

## X.

## DEMAND FOR JURY TRIAL

11.   Defendant demands trial by jury.

WHEREFORE, Defendant requests that the Court deny all relief requested by Plaintiffs; dismiss with prejudice Plaintiffs' claims against him, render a judgment that Plaintiffs shall take nothing from Defendant in this action, enter judgment against Plaintiffs and in favor of Defendant for Defendant's attorneys' fees and costs; and that the Court further grant Defendant all such other relief to which he is entitled.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Tammy L. Palomino
City Attorney

*/s/ Lindsay Wilson Gowin*
Senior Assistant City Attorney
Deputy Chief of Torts
Texas State Bar No. 24111401
lindsay.gowin@dallas.gov

7BN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:      214-670-3519
Telecopier:     214-670-0622

ATTORNEYS FOR DEFENDANT JOSUE RODRIGUEZ

## CERTIFICATE OF SERVICE

I certify that on November 27, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Lindsay Wilson Gowin*
Senior Assistant City Attorney